1  AARON M. CLEFTON (SBN 318680)
   REIN & CLEFTON, Attorneys at Law
2  1423 Broadway #1133
   Oakland, CA  94612
3  Telephone:  510/832-5001
   Facsimile:   510/832-4787
4  info@reincleftonlaw.com

5  Attorneys for Plaintiff
   GARRETT SIBLEY

6

7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| GARRETT SIBLEY, | CASE NO. <u>Civil Rights</u> |
| Plaintiff, | **COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:** |
| v. | |
| GRAND PRIX FIXED LESEE LLC dba HYATT HOUSE – BELMONT; GRAND PRIX BELMONT LLC, | **1. Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 _et seq._)** |
| Defendants. | **2. Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)** |
| | **3. Violation of the California Disabled Persons Act (Cal. Civil Code § 54 _et seq._)** |
| | <u>**DEMAND FOR JURY TRIAL**</u> |

        Plaintiff GARRETT SIBLEY, complains of Defendants GRAND PRIX FIXED LESEE

LLC dba HYATT HOUSE – BELMONT and GRAND PRIX BELMONT LLC, and each of

them, and alleges as follows:

        1.        **INTRODUCTION:**  The Hyatt House - Belmont, is a large hotel with over 130

rooms that is a desirable and affordable destination for travelers visiting Belmont, California.

The hotel was built in approximately 1995 and renovated by Defendants in 2008, 2013, and 2014.

Despite this construction, alteration and renovation history, which should have required Hyatt

House to be fully accessible under federal and state law, Defendants have not provided full and

equal access to disabled guests at their hotel. This includes denying Plaintiff an accessible

1

bathtub, paths of travel, and other amenities for his fully and equal enjoyment of the facilities like those of non-disabled persons.

2.      Disabled Plaintiff Garrett Sibley, who has never filed an ADA action prior to this lawsuit, reserved a designated accessible hotel room with an accessible bathtub at the Hyatt House approximately five months in advance of his stay through a third-party travel website. Then, approximately two months prior to his stay, he called the Hyatt House directly to confirm his reservation for an accessible hotel room with an accessible bathtub. Defendants confirmed that he had a reservation for June 5 through June 8, 2024, in an accessible hotel room with an accessible bathtub. However, when Plaintiff arrived at the Hyatt House on June 5, 2024, he found that the "designated accessible" room was in fact inaccessible in many respects, and the "accessible bathtub" was in fact a shower with big lip without a fixed shower seat which was unusable for him. The lack of access caused Plaintiff Garrett Sibley significant embarrassment, difficulty, and discomfort throughout his stay at the hotel because he was unable to bathe using an accessible bathtub for four days and suffered the indignity of not enjoying the hotel's amenities like non-disabled persons do. He also needed assistance in using the restroom because he was unable to open and close the restroom door independently. As a result of the lack of accessible bathtub, Plaintiff was forced to attend his appointments at Stanford medical center without bathing.

3.      It should never have been this way. Defendants and/or their predecessors-in-interest built the hotel in 1995 and performed multiple renovations of the subject premises. These alterations required Defendants to make the hotel accessible to disabled guests. As a result of these and other barriers, disabled Plaintiff Garrett Sibley was unable to meaningfully access and enjoy the Hyatt House located at 400 Concourse Drive, Belmont, California.

4.      Plaintiff is a "person with a disability" or "physically handicapped person" who requires the use of a wheelchair for locomotion. He is unable to use portions of public facilities which are not accessible to mobility disabled persons. Plaintiff was denied his rights to full and equal access to the Hyatt House - Belmont. He was denied his civil rights under both California law and federal law, and he continues to have his rights denied, because these facilities were not,

and are not now, properly accessible to physically disabled persons, including those who use assistive devices for mobility.

5.     Plaintiff seeks injunctive relief to require Defendants to make these facilities accessible to disabled persons and to ensure that any disabled person who attempts to patronize the subject premises will be provided accessible facilities. This request includes but is not limited to installation of an accessible bathtub in one of the designated accessible rooms at the hotel as is advertised on Defendants' website. Plaintiff also seeks recovery of damages for his discriminatory experiences and denial of access and of civil rights, which denial is continuing because of Defendants' failure to provide disabled accessible facilities.  Plaintiff also seeks recovery of reasonable statutory attorney fees, litigation expenses and costs, under federal and state law.

6.     **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 USC section 1331 for violations of the Americans with Disabilities Act of 1990, 42 USC sections 12101 *et seq*.  Pursuant to pendant jurisdiction, attendant and related causes of action arising from the same facts are also brought under California law, including but not limited to violations of Health & Safety Code sections 19953-19959; California Civil Code sections 51, 52, 54, 54.1, 54.3 and 55; and Title 24 California Code of Regulations, the California State Building Code.

7.     **VENUE:**  Venue is proper in this court pursuant to 28 USC section 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

8.     **INTRADISTRICT:**  This case should be assigned to the San Francisco intradistrict as the real property which is the subject of this action is located in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

9.     **PARTIES:**  Plaintiff GARRETT SIBLEY has a progressive neurological disorder called Friedreich's ataxia which causes deterioration of the nerve fibers in the spinal cord. Plaintiff no longer has much feeling in his lower extremities.  He is unable to walk independently, and he uses a manual wheelchair for mobility.  He is a "person with a disability" or "physically

3

1   handicapped person" who requires the use of a wheelchair for locomotion.  Plaintiff is unable to

2   use facilities which are not accessible to mobility disabled persons, including those who require

3   the use of a wheelchair.  Plaintiff is entitled by permit from the State of California to park any

4   vehicle which he drives or is transported in, in a designated and properly configured disabled

5   accessible parking space. This is his first and only Americans with Disabilities Act lawsuit.

6          10.     Defendants GRAND PRIX FIXED LESEE LLC dba HYATT HOUSE –

7   BELMONT and GRAND PRIX BELMONT LLC, are and were the owners, operators, lessors

8   and/or lessees of the subject business, property and buildings at all times relevant to each incident

9   described in this Complaint.  Defendants have owned and operated the property since at least

10  2007.  Plaintiff is informed and believe that each of the Defendants herein is the agent, employee,

11  or representative of each of the other Defendant, and each performed all acts and omissions stated

12  herein within the scope of such agency or employment or representative capacity and is

13  responsible in some manner for the acts and omissions of the other Defendants in proximately

14  causing the damages complained of herein.

15         11.     The Hyatt House - Belmont is a place of "public accommodation" and "business

16  establishment" subject to the requirements of 42 USC section 12181(7) of the Americans with

17  Disabilities Act of 1990; of California Health & Safety Code sections 19953 *et seq.*; of California

18  Civil Code sections 51 *et seq.*; and of California Civil Code sections 54 *et seq*.  On information

19  and belief, the Hyatt House - Belmont buildings and its facilities were built after July 1, 1970, and

20  since then have undergone construction and/or "alterations, structural repairs, or additions,"

21  subjecting each such facility to disabled access requirements per Health & Safety Code sections

22  19955-19959 *et seq*., and, as to construction and/or alterations since January 26, 1993, to the

23  disabled access requirements of section 12183 of the Americans with Disabilities Act of 1990.

24  Such facilities constructed or altered since 1982 are also subject to "Title 24," the California State

25  Architect's Regulations, also known as the California Building Code.  Further, irrespective of the

26  alteration history, such premises are subject to the "readily achievable" barrier removal

27  requirements of Title III of the Americans with Disabilities Act of 1990, as defined by the ADA.

28  42 USC § 12181(9).

4

12.   **FACTUAL STATEMENT:**  Plaintiff resides in Arcata, California, but his neurologist that specializes in his condition and supporting medical team are at Stanford Medical Center in Palo Alto, California.  At least once a year Plaintiff travels to Stanford for medical appointments that span several days.  His usual practice is to stay at a hotel in or near Belmont, California, because his friend who lives in San Mateo usually drives him to and from his appointments at Stanford Medical Center.  The Hyatt House – Belmont is very conveniently located for Plaintiff and his family to stay when he has appointments at Stanford and the hotel was the most affordable for the features offered when he made his reservations.

13.   Plaintiff had appointments scheduled at Stanford Medical Center starting on June 6, 2024.  Approximately five months before his scheduled appointments Plaintiff began looking for a hotel to reserve for June 5 through June 8, 2024.  Plaintiff found the Hyatt House – Belmont which offered accessible hotel rooms with an accessible bathtub on its website.  Plaintiff prefers to stay in accessible rooms that provide bathtubs instead of roll-in showers because they are easier for him to use independently. On December 30, 2023, Plaintiff reserved an accessible room with an accessible bathtub at the Hyatt House – Belmont for June 4 through June 8, 2024, through hotels.com.

14.   In or around the beginning of April 2024, approximately two months before his reservation, Plaintiff called the Hyatt House – Belmont directly to confirm his booking.  Plaintiff also confirmed that his reservation was for an accessible room on the first floor, with a bathtub that had a fixed transfer seat for the bathtub.  Defendants' representative assured Plaintiff that his reservation was all set and that he would have an accessible room on the first floor that included a bathtub with a transfer seat.

15.   On June 5, 2024, Plaintiff's partner drove him and his minor daughter from their home in Arcata, California to Santa Rosa, California to meet Plaintiff's friend, Barry. Barry then drove the group to the Hyatt House – Belmont in Belmont, California.  When they arrived, they parked their vehicle in an accessible parking space and the group went into the lobby to check in. They were assigned to room 1411.  After checking in, the group returned to their vehicle and drove through the hotel parking lot to a parking space near to the room.  Plaintiff was exhausted

1   and hot after the long drive, and he wanted to get inside the room quickly to cool down, bathe,

2   and rest.

3         16.    Plaintiff's friend pushed Plaintiff's chair from his vehicle to the room because

4   there was an incline between the parking space and the room which Plaintiff was unable to push

5   himself up independently.  Once inside the room, Plaintiff saw that there was an area with a pull-

6   out couch and a kitchenette, an area with a queen-sized bed, and a bathroom.  Plaintiff went into

7   the bathroom and saw that there was no bathtub at all.  There was only a shower with a significant

8   lip to get into.  There was also no fixed shower seat, as required by the ADA and state law, but

9   instead there was a movable shower chair which is unsafe for Plaintiff to transfer into and use.

10   See photo below.



27         17.    The door to the bathroom was also inaccessible for Plaintiff.  The bathroom had a

28   pocket door which did not have a handle that Plaintiff could use to close the door.  Further, the

6

path of travel around the bed was very narrow and difficult for Plaintiff to navigate in his wheelchair, and the height of the bed was too high for him to transfer into from his wheelchair.

18.     Plaintiff called the front desk immediately to request that he be transferred to a different room with a bathtub, which was accessible.  Defendants' front desk staff informed Plaintiff that the hotel was full, and they therefore could not transfer him to a different room. They suggested that Plaintiff speak to the manager of the hotel who would not be on the premises until the following morning.  Plaintiff agreed to speak to Defendants' manager in the morning.

19.     Plaintiff had to forego bathing on June 5, 2024, because it was not safe for him to use the shower in his room.  He also had to sleep on the couch rather than the bed due to the lack of space around the bed and the height of the bed. Further, Plaintiff had to ask for the assistance of either his partner or his daughter to open and close the restroom door when he needed to use the bathroom.

20.     On June 6, 2024, Plaintiff and his family ate breakfast in the lobby, and then Plaintiff went to the front desk and requested to speak with the Defendants' manager.  Ultimately, Plaintiff spoke with a woman identifying herself as the manager of the hotel.  Plaintiff explained to Defendants' manager that he had reserved an accessible room with a bathtub but had been provided with a room that was not accessible to him and that had a shower with a lip rather than a bathtub.  Defendants' manager informed Plaintiff that the hotel did not have any accessible rooms with bathtubs.

21.     Plaintiff was surprised at this and told Defendants' manager that the hotel website advertised accessible rooms with bathtubs and that he was promised an accessible room with a bathtub when he called to confirm his reservation.  Defendants' manager again confirmed that there were no accessible rooms with bathtubs on the property.  Plaintiff expressed his disappointment to Defendants' manager, and she offered to show him a different accessible room at the hotel when it became available after checkout so that Plaintiff could see if it would be more accessible for him.

22.     Plaintiff agreed, but he told Defendants' manager that he would be at Stanford Medical Center for appointments for most of the day.  He asked Defendants' manager to call him

on his cell phone, and provided her with his phone number, when the room was available and someone from his family would come take a look at it.  Defendants' manager agreed to this, but Plaintiff never received a call from anyone at the hotel to look at another accessible room.

23.     When Plaintiff returned from his day of medical appointments, he went to the front desk in the lobby to inquire about looking at another accessible room at the hotel, but Defendants' staff told him that they had knocked on his hotel room door, but no one answered.  By the time Plaintiff returned to the hotel Defendants' employees had given the other accessible hotel room to another guest.  Plaintiff was extremely frustrated at this news.  He had made a clear plan with Defendants' manager, but he was never contacted by any of Defendants' employees.  Further, he had to spend another night sleeping on the couch and not bathing due to the inaccessible conditions of Defendants' designated accessible hotel room.

24.     On the afternoon of June 7, 2024, Defendants employees finally showed Plaintiff another designated accessible room at the Hyatt House – Belmont, on information and belief room 2213. This room had a roll-in shower which Plaintiff could not use independently because he was unable to reach the shower controls from the seat in the shower.  However, Plaintiff ultimately decided to move rooms for the last night of his stay because in the new room, even though he could not bathe himself, he would at least be able to clean himself to a limited extent with assistance, and the bed height was lower so he would be able to transfer from his wheelchair to the bed to sleep.

25.     On June 8, 2024, Plaintiff and his family checked out of the Hyatt House – Belmont and drove home.  Plaintiff was extremely frustrated and felt humiliated by Defendants' lack of accessible features in their designated accessible hotel rooms.  Plaintiff was embarrassed at having to attend medical appointments without having bathed, and he was frustrated by not being able to independently access the bed, shower, and restroom in Defendants' designated accessible hotel rooms.  Plaintiff's disease is progressive, and he understands that he will ultimately be dependent on others for assistance with almost all daily living tasks.  However, right now he can still be independent in many tasks including using the bathroom and bathing, but Defendants took that independence away from him.  They made Plaintiff feel like a second-class

citizen due to the inaccessible features at Defendants' property.

26. Following the incident, Plaintiff reached out to both Defendants' manager and Hyatt Guest Care Support to complain, but neither offered to fix the issues complained of by Plaintiff. They simply tried to appease him with Hyatt points and a partial refund. Plaintiff declined these offers because he wants Defendants to fix the barriers to access at the Hyatt House – Belmont so that he can return and stay next time he has medical appointments in the Bay Area.

27. The building permit history of the Hyatt House - Belmont shows that the premises were built in 1995. Further, public records and building records show that Defendants bought this property in 2007. They then performed several extensive renovations. In 2008, they renovated the premises at a cost of $660,000, in 2013 they did so at a cost of $230,000, and in 2014 they did so at a cost of $550,000. However, despite the initial construction and renovations being after the effective date of the ADA barriers to access remain at the hotel. Given that there are 130 rooms in the hotel, Defendants were required to have seven accessible guest rooms. Of those seven rooms, five were required to be without roll-in showers, and two were required to have roll-in showers. ADAS § 224.2.

28. Further, many of the inaccessibility barriers encountered by Plaintiff would be readily achievable to remove, meaning not very expensive or difficult to remedy. Plaintiff estimates the costs of improving access in the designated accessible room 1114 can range between $200 - $1,000 for remediating each individual element to make the premises and restroom more accessible to the maximum extent feasible. For example, installing accessible handles and hardware on the restroom door would likely cost between $200-$400. Installing a fixed shower seat in the shower could cost $500-750. Lowering the bed in the accessible room so that it is at an accessible transfer height could cost $500 - $1000. Each of these are easy to do and do not cost very much to accomplish, and the benefit to disabled persons and Plaintiff is the ability to use the restroom which allows them to use the premises at all.

29. The above referenced barriers to access are listed without prejudice to Plaintiff citing additional barriers to access by an amended complaint after inspection by Plaintiff's access consultant. *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011); *Doran v. 7-Eleven, Inc.*

524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F.3d 939 (9th Cir. 2011). All of these barriers to access render the premises inaccessible to physically disabled persons who are mobility impaired, such as Plaintiff, and are barriers that Plaintiff may encounter when he returns to the premises. All facilities must be brought into compliance with all applicable federal and state code requirements, according to proof.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**42 USC §§ 12101 *et seq***

30. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 29 of this Complaint and incorporates them herein as if separately re-pleaded.

31. In 1990 the United States Congress made findings that laws were needed to more fully protect "some 43,000,000 Americans [with] one or more physical or mental disabilities;" that "historically, society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;" that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;" and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous..." 42 U.S.C. §12101

32. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

33. In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

10

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

34.    As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to "an inn, hotel, motel, or other place of lodging." 42 USC § 12181(7)(A).

35.    The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

11

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

36.     The removal of each of the physical barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one of the architectural and/or policy barriers complained of herein were already required under California law.  Further, on information and belief, alterations, structural repairs or additions since January 26, 1993, have also independently triggered requirements for removal of barriers to access for disabled persons per section 12183 of the ADA.  In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

37.     The ability to use the restroom and bathe in an accessible hotel room is a fundamental necessity of accessing and using a hotel. Therefore, the benefits of creating an accessible restroom with an accessible entry door and bathtub does not exceed the costs of readily achievable barrier removal. These costs are fundamental to doing business, like any other essential function of operating a bar, club, or restaurant, such as the costs of ensuring fire safety. It is thus readily achievable to remove these barriers.

38.     On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other mobility disabled persons in other respects, which violate Plaintiff's right to full and equal access and which discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and

1    accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

2    39.    Defendants' actions continue to deny Plaintiff's rights to full and equal access by

3    deterring Plaintiff from patronizing the Hyatt House - Belmont and discriminated and continue to

4    discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the

5    full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and

6    accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

7    40.    Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,*

8    Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights

9    Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of

10   his disabilities in violation of sections 12182 and 12183 of this title.  On information and belief,

11   Defendants have continued to violate the law and deny the rights of Plaintiff and other disabled

12   persons to "full and equal" access to this public accommodation since on or before Plaintiff's

13   encounters.  Pursuant to section 12188(a)(2)

14   [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief
15   shall include an order to alter facilities to make such facilities readily accessible to
     and usable by individuals with disabilities to the extent required by this title.  Where
16   appropriate, injunctive relief shall also include requiring the provision of an
     auxiliary aid or service, modification of a policy, or provision of alternative
17   methods, to the extent required by this title.

18   41.    Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil

19   Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to

20   implement the Americans with Disabilities Act of 1990.  Plaintiff is a qualified disabled person

21   for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the

22   basis of disability in violation of Title III and who has reasonable grounds for believing he will be

23   subjected to such discrimination each time that he may use or attempt to use the property and

24   premises, or attempt to patronize the Hyatt House - Belmont, in light of Defendants' policies and

25   physical premises barriers.

26   WHEREFORE, Plaintiff requests relief as outlined below.

27   //

28   //

13

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)**

42.     Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 41 of this Complaint and incorporate them herein as if separately re-pleaded.

43.     At all times relevant to this complaint, California Civil Code section 51 has provided that physically disabled persons are free and equal citizens of the state, regardless of medical condition or disability:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, *disability, or medical condition* are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Civil Code § 51(b). [Emphasis added.]

44.     California Civil Code section 52 provides that the discrimination by Defendants against Plaintiff on the basis of his disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

45.     Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

46.     Any violation of the Americans with Disabilities Act of 1990 (as pled in the third cause of action) constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a

14

violation of this section."

47.    The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by physically disabled persons within the meaning of California Civil Code sections 51 and 52.  As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory, and compensatory damages to Plaintiff, according to proof.

48.    **FEES AND COSTS:**  As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendants make their facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

WHEREFORE, Plaintiff prays for damages and injunctive relief as hereinafter stated.

### THIRD CAUSE OF ACTION:
### DAMAGES AND INJUNCTIVE RELIEF
### FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES  IN A PUBLIC ACCOMMODATION
**(California Health & Safety Code §§ 19955 *et seq*; Civil Code §§ 54 *et seq.*)**

49.    Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 48, above, and incorporate them herein by reference as if separately repleaded hereafter.

50.    Plaintiff and other similarly situated physically disabled persons, including those who require the use of an assistive device for mobility, are unable to use public facilities on a "full and equal" basis unless each such facility is in compliance with the provisions of California Health & Safety Code sections 19953 -19959.  Plaintiff is a member of that portion of the public

1   whose rights are protected by the provisions of Health & Safety Code sections 19953 *et seq.*

2   Further, Plaintiff is also protected against policy and architectural barrier discrimination by

3   California Civil Code sections 54 and 54.1, the "Disabled Persons Act." "Individuals with

4   disabilities or medical conditions have the same right as the general public to the full and free use

5   of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including

6   hospitals, clinics, and physicians' offices, public facilities, and other public places." Civil Code

7   § 54(a). Furthermore, "Individuals with disabilities shall be entitled to full and equal access, as

8   other members of the general public, to accommodations, advantages, facilities, . . . places of

9   public accommodation, amusement, or resort, and other places to which the general public is

10  invited." Civil Code § 54.1(a). Additionally, any violation of the ADA, including but not limited

11  to any violation of 42 USC sections 12182 and 12183, is also incorporated as a violation of the

12  Disabled Persons Act. Civil Code §§ 54(c), and 54.1(d).

13         51.    Title 24, California Code of Regulations, formerly known as the California

14  Administrative Code and now also known as the California Building Code, was in effect at the

15  time of each alteration which, on information and belief, occurred at such public facility since

16  January 1, 1982, thus requiring access complying with the specifications of Title 24 whenever

17  each such "alteration, structural repair or addition" was carried out. On information and belief,

18  Defendants and/or their predecessors in interest carried out new construction and/or alterations,

19  structural repairs, and/or additions to such buildings and facilities during the period Title 24 has

20  been in effect. Further, Plaintiff alleges, on information and belief, that construction, alterations,

21  structural repairs, and/or additions which triggered access requirements at all relevant portions the

22  Hyatt House - Belmont, also occurred between July 1, 1970, and December 31, 1981, and

23  required access pursuant to the A.S.A. (American Standards Association) Regulations then in

24  effect, pursuant to the incorporated provisions of California Government Code sections 4450 *et*

25  *seq*. Further, on information and belief, additions to the building after the initial construction also

26  occurred after January 1, 1972, triggering access requirements per Health and Safety Code section

27  19959. Alterations or additions after January 26, 1993, trigger ADA liability and requirements

28  per 42 USC sections 12182 and 12183 of the ADA.

52.     **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendants as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are physically disabled from full and equal access to these public facilities.  Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as inferior and second-class citizen and serve to discriminate against them on the sole basis that he is a person with disabilities who require the use of a wheelchair or other assistive device for movement in public places.

53.     Plaintiff is deterred from returning to use these facilities, because the lack of access will foreseeably cause them further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendants continue, to achieve equal access to and use of these public facilities.  Therefore, Plaintiff cannot return to patronize the Hyatt House - Belmont and its facilities and are deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other mobility disabled persons. Plaintiff specifically intends to return and patronize the Hyatt House - Belmont once it is made accessible, including the paths of travel and designated accessible hotel rooms at the facility.

54.     The acts of Defendants have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to all inaccessible areas of the premises that each of them has personally encountered, and, as to all areas identified during this litigation by Plaintiff's access consultant, that they or other physically disabled persons may encounter in the future. *Doran v. 7-Eleven, Inc.,* 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA)*, *Inc.*, 631 F. 3d 939 (9th Cir. 2011); *Oliver v. Ralphs Grocery* Co., 654 F.3d 903 (9th Cir. 2011).   As to the Defendants that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices and barriers that deny full and equal access for disabled persons, and for reasonable statutory attorney fees, litigation expenses and costs.

55.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any

1   continuing refusal by Defendants to grant full and equal access to Plaintiff in the ways

2   complained of and to require Defendants to comply forthwith with the applicable statutory

3   requirements relating to access for disabled persons.  Such injunctive relief is provided by

4   California Health & Safety Code section 19953 and California Civil Code section 55, and other

5   law.  Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3

6   and other law and attorney fees, litigation expenses, and costs pursuant to Health & Safety Code

7   section 19953, Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other

8   law, all as hereinafter prayed for.

9           56.     **DAMAGES:**  As a result of the denial of full and equal access to the described

10   facilities and due to the acts and omissions of Defendants in owning, operating, leasing,

11   constructing, altering, and maintaining the subject facilities, Plaintiff has suffered a violation of

12   his civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has

13   suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal

14   injuries, all to his damages per Civil Code section 54.3, including general and statutory damages,

15   as hereinafter stated.  Defendants' actions and omissions to act constitute discrimination against

16   Plaintiff on the basis that he was and is physically disabled and unable, because of the

17   architectural and other barriers created and/or maintained by the Defendants in violation of the

18   subject laws, to use the public facilities on a full and equal basis as other persons.  These

19   violations have deterred Plaintiff from returning to attempt to patronize the Hyatt House -

20   Belmont and will continue to cause each of them damages each day these barriers to access

21   continue to be present.  Plaintiff intends to return to the Hyatt House - Belmont once the premises

22   has been made accessible for his full and equal enjoyment.

23           57.     **FEES AND COSTS:**  As a result of Defendants' acts, omissions, and conduct,

24   Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by

25   statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access

26   for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore

27   seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the

28   provisions of Civil Code sections 54.3 and 55, and California Health & Safety Code section

1   19953.  Additionally, Plaintiff's lawsuit is intended to require that Defendants make their

2   facilities accessible to all disabled members of the public, justifying "public interest" attorney

3   fees, litigation expenses and costs pursuant to the provisions of California Code of Civil

4   Procedure section 1021.5 and other applicable law.

5          WHEREFORE, Plaintiff requests relief as outlined below.

6                                   **PRAYER**

7          Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this

8   Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the

9   unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless

10  Plaintiff is granted the relief he requests.  Plaintiff and Defendants have an actual controversy and

11  opposing legal positions as to Defendants' violations of the laws of the United States and the

12  State of California. The need for relief is critical because the rights at issue are paramount under

13  the laws of the United States and the State of California.

14         WHEREFORE, Plaintiff GARRETT SIBLEY prays for judgment and the following

15  specific relief against Defendants:

16         1.      Issue a preliminary and permanent injunction directing Defendants as current

17  owners, operators, lessors, and/or lessees of the subject property and premises to modify the

18  above described property, premises, policies and related facilities to provide full and equal access

19  to all persons, including persons with physical disabilities; and issue a preliminary and permanent

20  injunction pursuant to ADA section 12188(a) and state law directing Defendants to provide

21  facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide

22  full and equal access, as required by law, and to maintain such accessible facilities once they are

23  provided; to cease any discriminatory policies, and to train Defendants' employees and agents in

24  how to recognize disabled persons and accommodate their rights and needs;

25         2.      Retain jurisdiction over the Defendants until such time as the Court is satisfied that

26  Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically

27  inaccessible public facilities and policies as complained of herein no longer occur, and cannot

28  recur;

1        3.        Award to Plaintiff all appropriate damages, including but not limited to statutory

2    damages, general damages, and treble damages in amounts within the jurisdiction of the Court, all

3    according to proof;

4        4.        Award to Plaintiff all reasonable statutory attorney fees, litigation expenses, and

5    costs of this proceeding as provided by law;

6        5.        Award prejudgment interest pursuant to Civil Code section 3291; and

7        6.        Grant such other and further relief as this Court may deem just and proper.

8    Date: August 16, 2024                    REIN & CLEFTON

9

10                                              */s/ Aaron Clefton*
                                          By AARON CLEFTON, Esq.

11                                        Attorney for Plaintiff
                                          GARRETT SIBLEY

12

13   **JURY DEMAND**

14       Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

15   Date: August 16, 2024                    REIN & CLEFTON

16

17                                                */s/ Aaron Clefton*
                                          By AARON CLEFTON, Esq.

18                                          Attorney for Plaintiff
                                          GARRETT SIBLEY

19

20

21

22

23

24

25

26

27

28